# United States District Court

SOUTHERN **DISTRICT OF** FLORIDA

UNITED STATES OF AMERICA

V.

IVAN DE LA VEGA, and
JORGE GARCIA

(Name and Address of Defendant)

FILED by _____ D.C.
MAG. SEC.

AUG 1 1 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.   MIAMI

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-3233- O'Sullivan

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or around August 1998, until in or around November 1998, in Miami-Dade County, in the Southern District of Florida, the defendants did knowingly and intentionally conspire to import cocaine into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952(a) and 963.

I further state that I am a Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

_____
Signature of Complainant
JAY SILLS
U.S. CUSTOMS SERVICE

Sworn to before me, and subscribed in my presence,

8/11/00                              at Miami, Florida
Date                                    City and State

**JOHN J. O'SULLIVAN**
UNITED STATES MAGISTRATE JUDGE        _____
Name and Title of Judicial Officer      Signature of Judicial Officer

# AFFIDAVIT

I, Jay B. Sills being duly sworn, depose and say:

1. This affidavit is being made in support of a criminal complaint charging Ivan De La Vega and Jorge Garcia with conspiracy to import cocaine into the United States from a place outside thereof, in violation of Title 21, United States Code, Section 952(a) and 963 and conspiracy to possess with intent to distribute cocaine on the high seas, in violation of Title 46, United States Code Appendix, Section 1903(j).

2. I am a Special Agent of the United States Customs Service assigned to the office of the Special Agent In Charge, Houston, Texas and have been so employed for the past eleven years. Since that time my duties have included the investigation of persons and organizations smuggling controlled substances into the United States.

## Background

3. In June 1999, a confidential source of information ("CS1")[1] began providing information to the United States Customs Service ("Customs") that two Colombian nationals named Ivan De La Vega and Jorge Garcia were high ranking members of a Colombian-based maritime smuggling organization operating out of the north coast of Colombia. CS1 has worked closely with De La Vega and Garcia in the coordination of the shipment of cocaine for more than a year. CS1 related that De La Vega and Garcia were responsible for transporting multi-ton loads of cocaine on commercial shipping vessels. CS1 further stated that these vessels were loaded with cocaine offshore near various South American locations for transport to locations off the shore of the United States and Europe. CS1 further stated that the commercial vessels also carried legitimate cargo with the cocaine in order to hide the fact that there was cocaine on the vessels.

4. CS1 further informed me that during the latter part of 1998, De La Vega and Garcia coordinated the shipment of several loads of cocaine from the north coast of Colombia into the United States aboard a commercial vessel named the M/V PEARL II ("Pearl II").

5. I have also interviewed a second cooperating source of information in this case ("CS2"), who was a former crew member of the Pearl II. CS2 informed me he had served aboard the Pearl II during 1998 when it was used to transport three separate loads of cocaine to the United States from South America. CS1 and CS2 do not know each other and, to my knowledge, have never met. C1 and CS2 provided the information contained in this affidavit to me independently.

---

[1] The CS has provided reliable information in the past which resulted in the seizure of 2006 kilograms of cocaine in the Netherlands.

6. CS2 informed me that he joined the crew of the Pearl II in Costanza, Romania during January 1998 and had continued to be a crew member through December 1999. CS2 stated that the Pearl II left Europe with a cargo of steel in January 1998 and traveled to Santo Domingo, Dominican Republic. CS2 further informed me that Roberto Trujillo Nunez installed the false compartment under the Captain's cabin. CS2 said that CS2 believed that the Pearl II was to be used to transport cocaine because CS2 had been a crew member on another vessel that was used to smuggle cocaine. CS2 informed me that CS2 was aboard the Pearl II as a crew member on three separate occasions when the Pearl II was used to smuggle cocaine from South America to a point offshore from Ft. Lauderdale, Florida where it was offloaded to speed boats.

7. The details of the three cocaine-importation trips made by the Pearl II are set forth below, along with information that corroborates CS1 and CS2.

### First Cocaine Shipment – August 8, 1998

8. CS2 informed me that the first cocaine importation took place during the summer of 1998. According to CS2, the 156 bales of cocaine were loaded onto the Pearl II from two smaller vessels approximately 100 miles off the coast of Barranquilla, Colombia. CS2 said that the cocaine was hidden in the secret compartment located below the captain's cabin. CS2 further informed me that Pearl II traveled to a position approximately 50 miles off the coast of Ft. Lauderdale, Florida where the cocaine was transferred to a 40-foot red and white speed boat. The vessel then went into Port Everglades, Florida where its legitimate cargo was offloaded.

9. I reviewed official United States Customs Service port entry records for Port Everglades, Florida. Those records corroborate that the M/V PEARL II arrived at the Port Everglades, Florida from Coco Solo, Panama on August 8, 1998. Those records further establish that CS2 was a crew member on the Pearl II at that time.

### Second Cocaine Shipment -- September 14, 1998

10. CS2 told me that the second trip took place in September 1998. According to CS2, the Pearl II traveled to the same location off the coast of Colombia, where 112 bales of cocaine were loaded onto the vessel. CS2 further stated that the cocaine was hidden in the above-mentioned hidden compartment below the captain's cabin. CS2 stated that on this occasion, the captain of the ship was Jorge Castro. CS2 further informed me that, on September 11, 1998, during this voyage, while the Pearl II was en route from Haiti to Port Everglades, Florida, the United States Coast Guard ("USCG") boarded and searched the Pearl II, but did not find the cocaine. CS2 said that the Pearl II then traveled to a position off the coast of Ft. Lauderdale, where the cocaine was transferred to other smaller boats. CS2 stated that after offloading the cocaine, the Pearl II went into the Port Everglades and offloaded its legitimate cargo.

11. I reviewed official United States Customs Service port entry records for Port Everglades, Florida. Those records corroborate that the Pearl II arrived at Port Everglades, Florida from Port au Prince, Haiti On September 14, 1998. The records further corroborate that the captain of the Pearl II was Jorge Castro and that CS2 was a crew member.

12. I also reviewed the Pearl II's Ships Log Book in which it is corroborated that the USCG did board the Pearl II on September 11, 1998, and departed the vessel on September 12, 1998.

### Third Cocaine Shipment – November 3, 1999

13. CS2 informed me that the third importation took place in or around November 1999. The captain of the vessel was Mitchell Hugdson. CS2 informed me that approximately 115 bales, each containing approximately 30 kilograms of cocaine, were loaded into the hidden compartments under the captain's cabin in the Pearl II at approximately the same location off the coast of Barranquilla, Colombia. CS2 further informed me that the cocaine was brought to a position off the coast of Fort Lauderdale, but that they were unable to offload the cocaine because the people who were to receive the cocaine did not arrive at the transfer location. CS2 further informed me that the Pearl II then entered the port, where it remained for about 10 days. CS2 informed me that following the stay in port, the Pearl II went back to the rendezvous point off the coast of Ft. Lauderdale and transferred the cocaine to a red and white speedboat on or about November 3, 1998.

14. CS1 also corroborates numerous details of this voyage. CS1 informed me, for example, that during one of the several shipments of cocaine coordinated by De La Vega and Garcia, the Pearl II was to off-load the cocaine off the coast of Port Everglades, Florida, but that the people who were to receive the cocaine did not arrive at the appointed time. CS1 further informed me that the cocaine had to remain on the Pearl II and that the Pearl II docked in Port Everglades. CS1 further stated that the Pearl II was required to remain docked at Port Everglades for several days and was searched by the United States Customs Service, but that the cocaine was not discovered. CS1 further informed me that once the vessel was permitted to leave Port Everglades, the cocaine was off-loaded to go-fast boats some distance off the coast of Florida. CS1 further corroborated that the vessel was under the command of a Captain Mitchell Hudgson at that time.

15. I reviewed official United States Customs records of port entries at Port Everglades, Florida. Those records corroborate that the Pearl II arrived at Port Everglades on October 27, 1998 following a voyage from Haiti. The captain of the vessel was as Mitchell Hudgson and that CS2 was a crew member. Those records further establish that the vessel remained in Port Everglades until November 2, 1998

Additional Smuggling Activities Coordinated by
De La Vega and Garcia Using the Pearl II[2]

16. CS1 also informed me that De La Vega and Garcia were preparing to ship an additional load of cocaine on the Pearl II to Amsterdam. CS1 informed me that on November 7, 1999, approximately two metric tons of cocaine were to be loaded onto the Pearl II at a location off the coast of Orinoco delta, Venezuela. CS1 further informed me that the Pearl II was loaded with legitimate cargo bound for Tunisia. CS1 informed me that, after off-loading the legitimate cargo in Tunisia, in the later part of November 1999, the Pearl II was then going to take the cocaine to Amsterdam.

17. I have spoken to Netherlands Police, who informed me that the Pearl II arrived at the Orange wharf, Amsterdam on December 23, 1999. Upon the arrival of the Pearl II at the Orange wharf, it was boarded by a team of officers from the Netherlands Customs Service and the Netherlands Police. I am further informed by members of the Netherlands Police that during interviews with a member of the crew, the Netherlands Police confirmed that the Pearl II was carrying a cargo of cocaine. A search of the captain's quarters resulted in the discovery of 78 bales of cocaine, weighing 2006 kilograms, concealed in a false compartment under the floor of the quarters.

18. I showed CS2 a series of photographs and he identified a photograph of Ivan De La Vega as being a person known to him as "Pedro." CS2 said that he had met "Pedro" on a number of occasions and that "Pedro" had come aboard the Pearl II in Panama and had taken a video of the vessel. CS2 said that "Pedro" had been aboard the Pearl II several other times. CS2 said that "Pedro" had been aboard the vessel supervising welders and other workmen who were doing repairs on the vessel.

The M/V China Breeze

19. I have also received information corroborating the involvement of Ivan De La Vega and Jorge Garcia in another cocaine-importation scheme involving another commercial vessel named the M/V China Breeze. Specifically, I have confirmed that the U.S. Coast Guard ("USCG") boarded the China Breeze in the Caribbean Sea in or around June 1999. The USCG discovered 5 tons of cocaine hidden in an unused storage tank. The Captain and other crew were arrested and were prosecuted in the Southern District of Texas.

20. I am informed by U.S. Customs and Drug Enforcement Administration agents ("the agents") that they interviewed a crew member from the China Breeze, Nikolas Papadimitrou. Papadimaitrou stated that he and another crew member, Pacifico Duarte, boarded the China Breeze on the high seas at the same time the cocaine was loaded. Papadimaitrou and Duarte were responsible for communications and security of the cocaine. Papadimaitrou further stated that just prior to joining the vessel, he met with some

---

[2] This evidence was obtained from the Netherlands, and the interview of CS2 was conducted in accordance with the appropriate Mutual Legal Assistance Treaty.

Colombians in a restaurant in Cartagena, Colombia where one of the Colombians gave him specific instructions as to his duties aboard the vessel, including the coordinates and codes that were to be used to offload the cocaine in Europe. Duarte was also interviewed, and Duarte's statements were consistent with Papadimitrou's statement.

21. After the seizure of the cocaine from the China Breeze, CS1 informed me that both Ivan De La Vega and Jorge Garcia had been responsible for loading of the cocaine aboard the China Breeze. CS1 further stated that both Garcia and De La Vega were the unknown Colombians who had met with Papadimitrou in Cartagena to give instructions regarding the cocaine.

22. CS1 also stated that, at a later time, De La Vega and Garcia read Colombian newspaper articles that attributed the cocaine seized from the China Breeze to another well known Colombian cocaine transportation organization, Gustavo Gomez-Maya of Barranquilla. Gomez-Maya had been arrested in connection with a separate cocaine seizure from a commercial shipping vessel that took place within a few days of the seizure of the cocaine from the China Breeze. CS1 informed me that De La Vega and Garcia told CS1 that they were pleased that Gomez Maya had been blamed for the cocaine seized from aboard the China Breeze as it diverted suspicion from them.

## Conclusion

23. Based on the facts as delineated above, I submit that probable cause exists to believe that Ivan De La Vega and Jorge Garcia were involved in a conspiracy to import cocaine into the United States aboard the M/V PEARL II during 1998, in violation of Title 21, United States Code, Section 952(a) and 963, and conspiracy to possess with intent to distribute cocaine on the high seas, in violation of Title 46, United States Code Appendix, Section 1903(j).

Jay Sills, Special Agent
U.S. Customs Service

Sworn to and subscribed before me this _11_ day of August, 2000.

U.S. Magistrate Judge